Chief Judge Fuld (dissenting).
The decision now being made, I suggest, exalts form over substance and thereby brings about a most unjust result.
The majority seeks to justify its affirmance, holding the factor, the defendant corporation, liable, primarily on the ground that it failed to file a “ notice of lending ” and take action to insure that the moneys which it advanced to the subcontractor Raymar were applied to the proper purposes, as assertedly required by section 73 of the Lien Law.[1] In my view, that section has no application to the facts of the present case; it applies, in so many words, only to a “ person to whom trust assets have been transferred ’ and it is difficult to perceive how this defendant may be said to be such a person.
The “ trust assets ” in this case constituted the amount of money represented by the checks issued by Caristo to Raymar. The latter, it is true, took these checks and delivered them to the defendant. But, it is equally true, the defendant did not retain the proceeds of the checks or apply them to its own use. It was not, in any sense, a “ transferee ” of the “ trust assets,” nor did it divert them or participate in any later diversion by the subcontractor. All that the defendant did, when it received the Caristo checks, was to exchange them for its own checks, payable to Raymar (the trustee) in precisely equivalent amounts. Neither Raymar’s obligations to the defendant nor the amount of funds it had available for the beneficiaries of *517 the trust were affected, in the slightest way, by the procedure followed.[2]
Section 73 does not require that every assignee of the proceeds of a construction contract file a notice of lending. Such notice is available, at the factor’s option, to permit him to exercise his rights against trust assets but its absence may not be regarded as operative in the present case. The function of a notice of lending, according to the Law Revision Commission, which drafted the legislation, is to inform prospective suppliers and subcontractors that “ trust assets receivable by the trustee at a later stage of the improvement have been anticipated for current expense ” (1959 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1959, No. 65(F)], p. 216). It is designed to apply only in cases where a factor, who has made advances specifically for the purposes of the trust, is asserting the right to retain the trust proceeds in repayment of the loan, thereby actually reducing the amounts available for the beneficiaries. In this case, however, there is no indication that the defendant ever intended to retain those receipts which were subject to a trust in satisfaction of its loan. On the contrary, the defendant, far from using these receipts to reduce the amount of its outstanding loan balance, permitted Raymar to retain possession of the full value of the trust assets at all times.
That the defendant may have been “ entitled,” under the terms of its assignment—which was, as the court points out (opinion, p. 513), void as against the beneficiaries—to retain the proceeds of the Caristo checks, ought not be a basis for liability unless the defendant actually attempted to exercise such a right. A “ diversion” is defined in section 72 of the Lien Law as “ [a]ny transaction by which any trust asset is paid, transferred or applied for any purpose other than the purpose of the trust”. No such transaction has taken place in this case. However, the effect of the majority’s decision is to render the defendant liable even though it sorupu *518 lously avoided taking any action that would impair or adversely affect the rights of the beneficiaries. To do so, it seems to me, is to impose a penalty on this defendant for what it might have done rather than what it actually did.
I would reverse the order appealed from and reinstate the judgment of the trial court dismissing the. complaint.
Judges Burke, Scileppi and Jasen concur with Judge Breitel; Chief Judge Fuld dissents and votes to reverse in a separate opinion in which Judges Bergan and Keating concur.
Order affirmed.

. Section 73 reads, in relevant part, as follows:
“1. In any action against a person to whom trust assets have been transferred, to recover assets diverted from the trust or to recover damages for the diversion, a transferee named in a ‘ Notice of Lending ’ as provided in subdivision three ** * * shall be entitled to show by way of defense that the transfer was made as security for or in consideration of or in repayment of advances made to or on behalf of the trustee in accordance with such notice of lending and that such advances were applied for a purpose of the trust * * *.
* * *
“3. If funds are advanced to or on behalf of a trustee, for the purposes of the trust, either the .trustee or the person advancing the funds may file a ‘ Notice of Lending ’ as provided in this subdivision.”

. This procedure, I note, was adopted by the defendant, as factor, solely to permit it to exercise a technical dominion over the receipts and thereby maintain its position as against other creditors. (See Benedict v. Ratner, 268 U. S. 353.) Be that as it may, the indisputable fact is that Raymar, the defendant and the trust beneficiaries remained in exactly the same position in which they had been prior to the time the checks were exchanged.